United States v. Martinez. Our last case is on the briefs. Good morning. Good morning, counsel. I'm Alonzo Padilla. I'm with the Federal Public Defender's Office in Albuquerque and I represent Mr. Martinez in this case. Obviously, this court is concerned about this issue coming up over and over again. And as Judge Kelly pointed out, we have the problem with the decision in Kelly, I'm sorry, decision in Garcia and whether or not that limits this court's decision in this particular case. And I submit that it does not. And what I... Here we have U.S. v. Torrieta. I'm sorry? We have U.S. v. Torrieta, don't we? That's in the second issue regarding the residential burglary. But with regard to the robbery, I don't believe Garcia limits what this court can do and I'll indicate why. First of all, Garcia acknowledged that there were some issues with New Mexico law. As I stated, we acknowledge language in New Mexico cases suggesting that any quantum of force which overcomes resistance would be sufficient to support a robbery conviction. But what is said is less important than what is done. And that concerns me and obviously that also concerned Judge Lucero in the subsequent case of Ash, U.S. v. Ash, where he very clearly in a footnote, footnote number five, stated there, again referring to Garcia, we noted that some use of any physical force, however minimal, to overcome the victim's resistance in Caesar Province does not meet the violent force requirement. We also questioned whether a New Mexico statute qualified as a violent felony given language in the New Mexico cases suggesting any quantum of force which overcomes resistance would be sufficient to support a robbery conviction. To the extent Garcia does not comport with the rules set out in Stokelyn, it is no longer good law. And so our position is that of course Garcia was decided before Stokely, it was decided before the Bong decision. And because of that, we feel that this court can reconsider that particular issue. So I take it you would disagree with the proposition that our decision in Garcia was even more conservative on the amount of force required than Stokeling said? Well, I'm not sure if I would agree with that. I didn't think you would. The problem with Garcia is it, of course, did the analysis that was required. In fact, if by might, the three cases that seem to have talked about this analysis was the Bong, the Ash, and the Harris decision. They made it very clear that what the court has to do is go through this two-step process. The first step the court has to do is identify the minimum force required by applicable state law for the crime of robbery. And then secondly, the court must determine if that force categorically fits the ACCA definition of physical force. And of course, that first step involves an analysis of New Mexico law. And the law is not real clear on exactly what it takes to commit robbery. The cases cited are definitely somewhat confusing. As this court noted, in all those three decisions, you first look to the Supreme Court cases to find out what the Supreme Court has said in that particular state with regard to what's required to commit a robbery. The government refers to Bernal, and I think there was a question to Ms. Katz this didn't really stand for what the government's indicated it stood for. I think it very much, if anything, supports our position because it makes it clear that that force must be the trigger that helps separate the property from the victim. And part of the problem with New Mexico law is that there's problems with exactly what that requires. And again, in my particular situation, I'm talking about constructive force, what type of force in a constructive way, I guess, is necessary to commit robbery in New Mexico. And when you look at the Borrella case, again, this is an unpublished opinion of the Court of Appeals because the process involves having to go first to those cases from the Supreme Court. If there isn't anything helpful, then you go to the Court of Appeals cases. And that case involved an individual who reached into an open window, grabbed a purse, either at the time or shortly after that made a threatening statement, and was gone with the purse. That person... But wasn't the question in that case, whether the robbery constituted an aggravated crime against the person or property? In the Borrella case? Yeah. It really didn't deal with the requisite level of force. Whether it still had to be some force or some threat made to be able to separate the purse from the individual. In that particular case, it was clear from the victim's testimony that it happened so quickly that she really didn't have time to be fearful. It was after the fact that that statement was made. Let's change the facts in that particular case and assume that Mr. Borrella reached into the vehicle, grabbed the purse, and said nothing. At that point, it's larceny. But the fact is he made a statement after the fact, and that made it robbery. At least the Court of Appeals affirmed the jury's conviction. But force was not involved, though, in that case? No, force was involved in that case. And that's the problem, I think, with New Mexico law, that it involves... But the crime, it was a different focus in that case. It was on whether it was a force involving a robbery. Well, I think the point I'm trying to make is that that threat or that force has to be something that's done before the act that results in the property being taken from the individual. In that case, it didn't happen. The other case from the State of New Mexico is the Hernandez case involving a bank robbery. In that particular case, the defendant goes into a bank, goes up to the teller, and says, give me all the money in the top drawer and don't set off the alarm. In one hand, he has a note. The teller could not see what was in the other hand, if anything. And the court affirmed that particular conviction also on the basis that that allowed a reasonable person, or allowed, at least in this case, maybe not a reasonable person, but the defendant in that case, to assume that there might have been something in his other hand. What if his hand had been, both of his hands had been visible when he made that statement? Would that have been bank robbery? And we submit that, of course, it would not be. That's the problem with New Mexico law. And then you have other cases where the convictions were overturned. One case involved US versus, I mean, sorry, Mexico versus Sanchez, where the individual, the victim was in the bathroom using the restroom. Someone came up from behind him, I guess touched him in the back or back area, grabbed his wallet and ran. That was not considered to be robbery, but rather simply a larceny offense. And the other that's even more confusing is the Curley case, where the defendant ran up from behind, I guess, the victim, grabbed the purse and ran. And during the act, touched or bumped into the victim and then ran. And of course, he was asking for lesser included instruction on larceny, which was denied by the district court and the court of appeals reversed, indicating that that was proper. In other words, he should have gotten the lesser included offense. And I think part of the facts in that case was that the defendant testified that he was intoxicated and that that might have been the reason why he pumped into the individual, but it wasn't a robbery. And that's what the court of appeals essentially agreed with. So that's kind of where the problem is with regard to New Mexico law, that it requires either no force or minimal force. So let me ask you something. So all these, this excellent background you've given us of New Mexico law, I mean, wasn't that the state of the law when Garcia was decided? I mean, these cases you're talking about, they're not all new, are they? They're older cases. That's part of the problem. But I think you have to look at it from the point of view of what this court decided in Bong, Ashley and Harris, and also the fact that Stokely came out after that. I know, but we have, I've, this, you were probably here for the first argument on this issue. Right. And there just seemed, I have a disconnect with the whole deal because we've made a decision on this particular statute already, and so necessarily the argument is, well, your decision in that case was wrong, so don't, it's out and we get a new crack at it. I mean, am I oversimplifying it? Well, I think, I guess one panel shouldn't overturn the ruling of another one. It's not that we shouldn't, we just can't. Right, but didn't that happen in Ashe? I mean, I think you cannot ignore the footnote of Judge Lucero in that particular case. Well, that wasn't an overruling, that was saying, I don't know about that. Right, well, I think it comes close enough to saying, well, we maybe should look at this issue again, and that's, you know, where we are with that. But there's a procedure for that, and that's to ask everybody, the whole court to hear it. Right. If we just disagree with the prior panel decision, I mean, I just, all these things that I'm hearing are things that were the state of the law when Garcia was decided, and so it's like there's nothing changed. If you said, oh, well, the New Mexico Supreme Court's issued a new decision that is entirely contrary to everything you've believed before, well, maybe you've got something to talk about then, but when we're just talking about the same state of the law, I think what you're asking for is for us to overrule another panel opinion, at least to disregard it. Maybe do what happened in Ashe, to disregard and look at it a second time again, because you do have a little bit more clarification, not just from the Supreme Court, but from the cases that also were decided on that same issue. And that's really your hook, whether Stoeckling somehow alters or overrules Garcia, right? Is that the chronology? Did Stoeckling come down after Garcia? Right, it did. I guess maybe one of the solutions also would be to send this back to the New Mexico Supreme Court on a certificate to have them clarify what exactly it takes to commit robbery in the state of New Mexico, because technically, just based on the person could be on the wrong side of town in a high crime area, could be walking down the street and someone looks at them in an angry way and doesn't say anything, but simply by the way they look at them or sign, and that person turns over their wallet, turns over their purse. Is that robbery? That'd be larceny probably, wouldn't it? Yeah, it would be larceny, exactly. So that's no force whatsoever. That's exactly what happened in Borrella, and it's essentially what happened in the Hernandez case. That's where the problem lies in terms of the contradiction in New Mexico law that was relied upon in Garcia, and we submit incorrectly. On the issue of burglary, I'll just spend a few minutes, and I will just make the argument that New Mexico burglary does not fit the generic definition of burglary as that has been defined most recently by the U.S. Supreme Court in Stilts, meaning a structure or vehicle that has been adopted or is customarily used for overnight accommodation. It's our position that in New Mexico, residential burglary could essentially be committed if a person enters a vehicle door, someone is sleeping. If someone maybe has too much to drink at a bar, decides to stay in the vehicle that night rather than taking a chance driving home, someone breaks into the vehicle, residential burglary. And we think that that simply is not the case, and that that also should not... What do we do with U.S. versus Torreada? Well, that's a problem. Again, that is a decision from this court. I guess it's our position that that also misinterpreted New Mexico law. And I, at this point, would reserve the remainder of my time for rebuttal. Thank you. Good morning again. Good morning. May it please the court. My name is Paige Messick. I'm still a United States... Assistant United States Attorney from New Mexico. So Mr. Martinez makes two arguments here, neither of which is the same as the argument that he made below. So he has to meet the plain error standard, which he has not acknowledged, let alone attempted to meet in his briefs or an oral argument. So this court would be acting well within its discretion to decline to review his arguments at all. But if it were to take up plain error review, there's no error here as to either of the predicate offenses. Just for fun, just for fun, let's talk about Richeson, which is the case, the end of the road quote that we see almost every day, which says, if you don't talk about plain error and go through the steps in your appellate brief, that that's the end of the road for that issue. Richeson is a civil case. Does the end of the road apply here in a criminal case? Do we have different standards in a criminal case? The court has acknowledged in the Courtney decision, for instance, that there can be a little bit more road if the court chooses to go down it. The court has the discretion to entertain an argument on plain error review. So maybe not an end of the road then. But it shouldn't exercise that discretion, and it has declined to exercise that discretion in cases where it's clearly an unpreserved issue. The appellate doesn't follow 10th Circuit procedure in identifying where it was preserved. Yeah, unpreserved issue is one thing, but then having then to go to the next level and say, okay, you didn't raise it below, and now on appeal, if you're going to raise it, you have to walk through plain error in your appellate briefing, otherwise, end of the road. That's right. Often the court will say in those circumstances, yes, this is the end of the road, and especially where it's not then even addressed in the reply brief, and especially when it's called out in the answer brief as being an unpreserved issue subject to plain error review. It's not the government's burden in that case to show that plain error isn't established. It's the appellant's burden to show that it is. So the court doesn't have to go into it at all, but if it were, there's no error at all here, and there certainly couldn't be any error because there is an on-point decision of this court that is published addressing each of the predicate offenses that Mr. Martinez is challenging. So I think we've narrowed down in the argument there that if Mr. Martinez has a chance here, that maybe it's because Stokeling is an intervening case that made it harder. Well, let's see. Hold on. Certainly that changed the rule, and you have to have more force to commit a burglary. Therefore, there's not a good match with New Mexico law. Can you address the effect of Stokeling? I suppose that that is his argument. The problem is Stokeling went the other direction. The parties agreed below. I'm sorry. I may be But essentially, everybody thought if Stokeling came out in the defendant's favor, then it would be dispositive of all of this. Perhaps it was a surprise that it came out the other way, but it's still equally dispositive. Stokeling adopted a standard that is less conservative than Garcia applied. So the ash footnote is not Judge Lucero questioning whether Garcia's result still applies after Stokeling. I think it's Judge Lucero saying it looks like Garcia actually applied a standard that is now too strict. Garcia was too hard a case. Had it come out after Stokeling, it would have been easier because the Supreme Court made it clear that we're not looking to assess the strength, the power of force used to overcome a victim's government. I'm sorry. The footnote, you think, intends to say that Garcia was too strict of an interpretation against the government. I think that that is the reading, the reasonable reading of footnote five, and it's certainly the reading that Stokeling would compel. Everybody was saying New Mexico robbery is not enough because you can violate it by force to overcome resistance, and Stokeling squarely disposed of that argument. The only other argument I have seen Mr. Martinez specifically raise to get over Garcia is that Garcia doesn't control because it didn't involve the issue he's now raising as to threat instead of actual use of force. And Garcia is true, maybe did not specifically address that, but it held that New Mexico robbery is categorically a violent felony, and unless categorical does not mean what I think it means, that forecloses a later court from holding that New Mexico robbery is not a crime of violence or a violent felony. And Turrieta, not to confuse the issues because Turrieta is a burglary case, but Turrieta had some very useful language on this point in discussing whether a New Mexico court of appeals case, a particular section of it was dicta or a holding, and it said that that piece was a holding, and I quote, regardless of whether a party raised the issue, the court decided it. And then Turrieta went to quote Garner's law of judicial precedent, the distinction between a holding and a dictum doesn't depend on whether the point was argued by counsel. Garcia squarely addressed whether New Mexico robbery is a violent felony, and it held that it is. Garcia's on point, it remains good law, and that should be the end of the question. The other predicate offense, there's a similar argument here. Turrieta disposed of this issue, it held that New Mexico residential burglary does not cover entry of occupied vehicles like a car, a boat, or an aircraft. In other words, you can't, as Mr. Martinez is claiming, be convicted of New Mexico residential burglary by breaking into a Ford Fiesta, even if somebody happens to have slept there. Now below he said that his argument wasn't foreclosed by Turrieta because he was making a different kind of argument as to unauthorized entry. Now he just says that Turrieta was wrong. He says that he understands that one panel can't overrule another, he still says Turrieta is wrong, he points to some Supreme Court cases on sorry to say-sis, and there's some amount of flexibility there, but of course that's a different animal on the Supreme Court. So let me back you up to the argument he made below, because I think that's similar to some other arguments we've heard today, and the thrust of it appears to be, yes, I know you, for example, held that robbery is a crime of violence in the Garcia case, but my argument as to why it's not is different than the one that was presented in that case. I mean, does that, does that work? It's novel, I've not heard that. I suppose a court could certainly issue an opinion saying we are only considering this argument, we're not considering, we're not deciding if this statute is categorically a violent felony, but if the court does decide that the statute is categorically a violent felony, that's the holding of the case, even if it didn't just, even if it didn't grapple with an argument that later counsel comes up with. It doesn't make that holding not binding anymore. I mean, what if, what if we decided that robbery was categorically a violent felony and we were dead wrong and, and someone, a new argument showed that we were clearly mistaken? The procedure for correcting that is to take the case en banc. I don't believe that the court was dead wrong or wrong at all on either of these issues, but Mr. Turrieta, for instance, did seek en banc review. I think that Garcia did too. I'm sure that Turrieta did. Now, Mr. Martinez could try his hand at that procedure too, but unless and until the court grants that review, those cases are the law of the land. Or this, this land. The land of these six states. Yes. Unless the court has other questions, the United States just asks that it affirm the judgment of the district court. Thank you. To begin with, in terms of whether this case can be considered de novo, I think it really comes down to whether this court is reviewing whether the defendant's conviction constitutes a crime of violence under that particular statute. In other words, it's, it's a question of whether or not Mr. Martinez should be held liable based on that enhancement. In other words, I think it's very limited to that and whether or not it might've been raised below. And just to clarify, our office was, was not the attorney that represented Mr. Martinez who we appointed after he was sentenced. But I think it's very clear that the issue is just whether or not that particular prior conviction constitute a crime of violence and it's not anything but de novo review. With regard to again, what's required under the analysis, the analysis as robbery, I'm sorry, is the analysis must focus on the lowest level of conduct that can support a conviction under the statute I'm quoting from the bond decision. And so it does involve having to, to look at state law and I don't think there's anything wrong with taking a second look at New Mexico law based again on the, the, the, the law that has changed somewhat, not only in the Supreme court, but also in the circuit in terms of the analysis and bond Ash and Harris. And just to quote something that is from the, from the bond case, I guess it's a case of a quote from the state versus Aldersoft case. That's the Kansas Supreme court, right? To constitute the crime of robbery by forcibly taking money from the person of its owner, it is necessary. The violence to the owner must either proceed or be contemporaneous with the property and robberies not committed with a theft or the thief has gained peaceful possession of the property and uses no violence except to resist arrest or affect the escape. And I think that's really what the problem is here under New Mexico law, that you could essentially take property from an individual and make the threat afterwards or make it contemporaneous to that particular taking. And that simply is not enough. And that's where the problem lies with regard to New Mexico law. And we would ask the court to again, look at this issue again. I think it's an important issue. This issue is going to keep coming up. There's different ways to deal with it. One might be again, to certify it to the Supreme court. And one might be just to say, you know, looking at Garcia and looking at the Ash decision we simply did not give enough careful analysis to New Mexico law defines robbery. And it's clear that it would require a minimal amount of force or maybe no force at all in terms of whether or not that works. Thank you. Thank you. Thank you both for your arguments this morning. The case is submitted. Court is adjourned.